THE STATE OF TEXAS v. PAUL BREMOND.

1. Whenever a tax is authorized by law, and no special provision is made as to the source from which the revenue is to be derived, the law implies that the tax shall be levied upon all property subject to general taxation, and collected as other taxes.

2. The legislative power may confer upon local corporations the power to assess taxes for particular specific purposes, and the school directors must be regarded as civil corporations.

3. Irregularities in assessments, when not resulting from fraud, will not render the taxes founded upon such assessments void.

4. The third section of the act of August 13, 1870, requiring the boards of school directors to levy and have collected, when necessary, an *ad valorem* tax on all taxable property of the county, not exceeding one per cent., was in force and applicable to assessments made in 1871.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit brought by the State of Texas, suing for the benefit of the school fund of the school district of the county of Harris, to recover the amount claimed to be due on an assessment of $\frac{25}{100}$ of one per cent., for the year 1871, for the purpose of building school houses and maintaining schools in said school district.

The defenses relied on in the court below were: 1. That the county of Harris had never been divided into school districts as required by law. 2. That the body styling itself "the board of school directors of the school district

of Harris county" had no legal existence or authority to levy the tax for which the suit was brought. 3. That no "school district of Harris county" has or could be lawfully created. 4. That the act under which the right to levy and collect the tax sued for was claimed was inoperative and void, because it does not specify any or upon what property the tax should be levied.

The evidence disclosed that Harris county had never been divided into school districts; that there was one board of school directors for the entire county, and that board, on the thirteenth of July, 1871, levied a tax of $\frac{95}{100}$ of one per cent. on the assessment roll of 1871, for the purpose of building school houses and maintaining schools.

Verdict and judgment for appellee.

*S. G. Newton*, for appellant.

No brief for appellant has reached the hands of the Reporters.

*Crosby & Hill*, for appellee, file no brief, but refer the court to arguments in other causes involving the same questions.

WALKER, J.—The instructions of the court to the jury in this case are as follows, viz.:

"If from the evidence you find that Harris county was never subdivided into school districts (two or more), and no school directors were, after such subdivision, ever appointed to such school districts so ascertained, then, under the law governing the case, there is no legal board of school directors, and the resolution in evidence is a nullity. If you so find the facts, find for defendant on this branch of the case.

"The section five, under which it is claimed by plaintiff that the alleged tax sought to be collected in this case, is

inoperative, because it does not in itself, or by reference to any other law, designate the subject matter of taxation. The omission is one which the court has no power to supply; but that being a matter for the Legislature, the judiciary, according to its general powers—notably under Section 1, Article 2, of the present State Constitution—is restricted to the law as it is written.

"Before a cause of action upon which suit may be maintained accrues for non-payment of a tax, the person who is to have his property taxed must either be called upon for rendition of his property for taxation, or where he does not render his property for taxation, then the justice of the peace where the property is situated must assess it; and before the sheriff can seize personal property, or before the tax claimed to be due on real estate can be sued for, the board of school directors—legally existing—must in some manner have caused an assessment and valuation of the property of the person against whom the tax is sought to be levied to have been made and placed in the sheriff's hands (under instructions from the Board of Education); until then the citizen is not in default, and is not liable to be sued."

We have had before us a class of cases, involving generally the same questions which are raised in the one under consideration. A great diversity of opinion is found to exist among the Judges of the District Courts; and the profession is also divided in opinion touching the questions raised upon this record. No great changes can ever be effected in government, or in the social order of things, without exciting opposition; and this opposition often provokes itself to rancorous antagonism.

We have repeatedly acknowledged our great indebtedness to the learning and fairness of the profession in almost all cases which have come before us for adjudication; but unfortunately we are admonished that the case

now under consideration belongs to a class of cases, the solution of which has been carried to the arbitrament of political rather than judicial decision.  When this becomes the case, none can deny the danger which threatens judicial investigation.  The fanaticism of politics is bold to assail the temple of justice.

When the case of Kinney v. Zimpelman was decided, all the questions which are raised upon this record were fully considered, and we do not deem it necessary now to fortify or review the doctrine of that case.  The decision of the case at bar is referable thereto ; but it is perhaps incumbent upon us again briefly to notice the points assumed in this class of cases by those who object to paying the tax.

It is assumed that the State has not been properly subdivided into school districts ; that there has been no special assessment of property to be taxed for school purposes ; that the law does not especially designate the property to be taxed ; the legal and constitutional existence of the board of school directors is denied—the constitutionality of the school laws, etc., etc.

It may perhaps be said, in distinguished honor of the framers of our Constitution, that no State Constitution makes a broader or more ample provision for universal public education than does that of the State of Texas. It is left to the Legislature, in its wisdom, to carry into effect and develop the fruition of the provision which the Constitution has made, and it could not be expected that a perfect system would result from the initiatory effort in this direction; and that confusion and ambiguity, such as to puzzle the best legal minds, should arise, is not at all anomalous.

Regarding the question as one involving the highest public interest, and feeling at all times the great danger which must arise from a clash between the co-ordinate

branches of the government, we have endeavored, as a court, to divest ourselves of all bias, prejudice and preconceived conviction, and consider these questions not only with a view to their great public importance, but to view them in the clear light of the law as they are affected by sound reasoning and precedent. It is true the action of the Thirteenth Legislature has divested these cases of much of their importance, as great modification has been made in the law; so much so, indeed, that it may be said a new system is now to take the place of the old. But let us recur to some of the objections urged against the school tax, such at least as may be regarded as most formidable.

The act of August 13, 1870, provided that each organized county should constitute a school district. The county courts were made *ex officio* school directors, with power to subdivide their counties into school districts, as might be thought necessary. The act of April 24, 1871, superseded the county courts as school directors, and authorized the supervisors to appoint directors, and subdivide counties into districts. The act of November 29, 1871, does not materially change the act of April 24. We are unable to find wherein these provisions of the law have been violated in a manner to render the collection of the tax illegal. We are abundantly justified by authority in holding that wherever a tax is authorized by law, and no special provision is made as to the source from which the revenue is to be derived, the law implies that the tax shall be levied upon all property subject to general taxation, and collected as other taxes. (See Hale v. The City of Kenosha *et al.*, 29 Wis., 599.)

The main objection to the law under consideration is, that the Legislature has attempted to delegate, without authority of law, the taxing power to the school boards. In Kinney v. Zimpelman the court refer to the con-

stitutional provision on this subject, which authorizes the Legislature to confer upon local boards of directors what is denominated legislative power; but we deem it unnecessary to resort to this provision of the Constitution to justify the action of the local boards. They do not exercise a legislative power; they pass no law. The tax is levied and collected under an act of the Legislature. It is certainly too late to deny that the legislative power may confer upon local corporations the power to assess taxes for particular specified purposes, and these school directors must be regarded as civil corporations.

In a late work upon municipal corporations by the Hon. John T. Dillon, LL. D., one of the circuit judges of the United States, it is said: "The school district, or the road district, is invested with a corporate character, the better to perform, within and for the locality, its special function, which is indicated by its name. It is but an instrumentality of the State, and the State incorporates it, that it may the more effectually discharge its appointed duty."

In Harris v. School District No. 8, (8 Foster, N. H., 58–61), Judge Bell remarks upon the powers of school districts: "These little corporations have sprung into existence within a few years, and their corporate powers and those of their officers are to be settled by the constructions of the courts upon a succession of crude, unconnected and experimental enactments." It is very doubtful whether the embarrassments of the New Hampshire court, growing out of crude and experimental enactments, could have been greater than those we are contending with. The learned judge further remarks of the school districts of New Hampshire, that they are *quasi* corporations of the most limited powers known to the laws. "They have no powers derived from usage. They have the powers expressly granted to them, and such

implied powers as are necessary to enable them to perform their duties, and no more. Among them is the power to vote money for specified purposes, and the power to appoint committees to carry their votes relative to those purposes into effect. The district may clearly, by their votes for building and repairing school houses, limit the expense to a definite sum, and they may limit the precise repairs or the exact description of the school house to be built, and when this is done, the committee (appointed to carry the votes into effect) cannot bind the district by exceeding these limits. These committees are special agents, without any general powers over the affairs of the district, and their powers are confined to a special purpose, and no inference can be drawn from the general nature of their powers."

Due attention to these plain and simple explanations may serve to divest the question as to how far these boards in our own State are authorized by law to act, of its trouble and confusion, and enable us to determine whether they have or not, in any case, transcended the scope of their authority.

It may be proper here to remark that we do not deem it legitimate or incumbent upon us to inquire as to what influences may have been brought to bear upon these local boards by the Superintendent of Schools, the Supervisors, State Board of Education, or any other authority or power. Their action is not so impeached, except in the arguments of counsel, as to make this a legitimate subject of inquiry. There may be some irregularities in the manner in which the school tax has been assessed, but we do not meet with any which, in our judgment, demands of this court a decision adverse to the collection of the tax.

In the Missouri River, Fort Scott and Gulf Railroad Company v. Morris *et al.*, 7 Kansas, 210, the Supreme

Court decide that irregularities in the assessments made
by the county clerks, as a board or acting separately,.
will not render the taxes founded upon such assessment
void. We take it that this can be true only in the absence
of fraud; and we here say unequivocally that if we were
satisfied that there has been fraud practiced in any of the
cases before us, touching the assessment or collection, we
should not hesitate for one moment to set it aside.

Finally, it is insisted that the provision of the law un-
der which the one per cent. school tax has been assessed
was repealed by a subsequent statute. In Kinney v.
Zimpelman we gave two reasons, which we still consider
good, for holding that the law was not repealed; first,
that the law especially excepts from repeal all special
acts, and this we regard as a special law; and second, we
do not believe it could have been the intention of the
Legislature to repeal the law by an act which was num-
bered on the calendar of the Senate as number 99, and
which contained the sections numbers 8 and 30, as they
afterwards became a part of the law. This bill was in-
troduced in the Senate several days before the act which
it is claimed to have repealed. The latter was numbered.
166. Let us suppose that both the acts were drafted by
the same individual. Is it possible to suppose that he
would have intended in a bill introduced to-day to repeal
the provisions of a bill which he intended to introduce
the following week? Or suppose the two bills are the
separate product of different minds, is it reasonable to
suppose that A. would introduce his bill to-day for the
purpose of repealing the provisions of a bill to be intro-
duced by B. a week hence? This would be absurd, even
upon the supposition that A. knew in advance what
would be the provisions of B.'s bill; for by all precedent
A. would first endeavor to defeat B.'s bill on its merits,.
and if he should fail he might then introduce a subse-

quent bill in hostility to B.'s bill. But we dismiss the further consideration of this question.

We have tried to exclude from the consideration of these cases all ultra or extraneous questions. But we cannot dismiss from our minds the fact that the State is indebted to a class of most meritorious and deserving persons, a majority of whom are ladies, who have employed their time in teaching the youth of the State under the promise and expectation of being paid out of the fund which has been restrained by these injunctions. Many of these ladies have absolutely suffered from want of their salaries, so withheld from them. We said this is the debt of the State; in one sense it is, and the honor of every citizen is pledged to its payment; but in a more accurate sense it is only the debt of certain individuals, corporations and men of means. Most of the counties, and to the honor of the people, be it said by far the greater number of the citizens of the State, have paid their proportionate shares of the tax. There is then, beyond the legal obligation, a strong moral obligation resting upon every property-holder to pay this tax.

It is proper to remark that we are fully persuaded that this contest has grown out of reasonable and formidable objections to the legality of the tax, and we are far from holding those who have refused to pay it as enemies to society and good government; but we have weighed the arguments *pro* and *con*, and have deliberately determined that the tax is legal and ought to be paid. But we shall rejoice if it be found that the great need of public education is provided for by laws less cumbersome, crude and ambiguous than those which we have been compelled to consider.

Taking what we have herein said in connection with our opinion in Kinney v. Zimpelman, we have said all that we think it incumbent to say in an opinion disposing of

nearly all the tax cases. There are yet several cases un-decided, involving other important questions which have not been herein considered; but all those cases involving the principles involved in the case now under considera-tion and in Kinney v. Zimpelman will be regarded as herein decided.

This case is reversed and remanded.

REVERSED AND REMANDED.